**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **THE ESTATE OF CLAY AARON ESTES,** | * | |
| **by and through its Personal Representative,** | * | |
| **ASHLEY ESTES,** | * | |
| **Plaintiff,** | * | |
| | * | **Case No. 1:26-cv-490** |
| **v.** | * | **JURY TRIAL DEMANDED** |
| | * | |
| **CITY OF ORANGE BEACH, ALABAMA,** | * | |
| **and JOHN DOES 1-10,** | * | |
| **in their individual capacities,** | * | |
| **Defendants.** | * | |

## COMPLAINT

COMES NOW the Plaintiff, the Estate of Clay Aaron Estes, by and through its duly appointed Personal Representative, Ashley Estes, and files this Complaint against Defendants City of Orange Beach and John Does 1-10, and alleges as follows:

## INTRODUCTION

**1.** This is a civil-rights and wrongful-death action arising from the death of Clay Aaron Estes while he was a pretrial detainee in the custody of the Orange Beach Police Department Jail.

**2.** From August 9, 2025, until his death on August 12, 2025, Mr. Estes was wholly dependent on Defendants for his safety, medical care, and basic human needs.

**3.** During this period, Mr. Estes exhibited significant medical and mental-health concerns, including conditions that required monitoring, evaluation, and appropriate custodial safeguards, and he had just returned from an emergency-department hospitalization, facts that placed Defendants on actual notice that he was vulnerable and required protective supervision.

**4.** Rather than provide constitutionally adequate care and supervision, Defendants failed to implement and maintain the basic safety measures necessary to protect Mr. Estes from a known and obvious risk of serious harm, including suicide.

**5.** On the evening of August 11, 2025, Mr. Estes's supervision was affirmatively discontinued following a shift change. On the morning of August 12, 2025, Mr. Estes was found hanging in his jail cell with a sheet around his neck. He died of asphyxia caused by hanging.

**6.** The manner in which Mr. Estes was treated was not aberrational. It reflects the City's standard operating practice for detainees held in the Orange Beach Police Department Jail, who are routinely subjected to inadequate intake and suicide-risk screening, inadequate monitoring and cell checks, discontinuity of watch status across shift changes, and inadequate emergency response, the same deficiencies that killed Mr. Estes.

**7.** Mr. Estes's death was not an isolated or unavoidable event. It was the direct and foreseeable result of Defendants' deliberate indifference and of the City's own policies, customs, and practices, including its persistent failure to train, its persistent failure to supervise and discipline jail personnel who violate detainees' rights, and its ratification of the very conduct that caused this death.

**8.** As a direct and proximate result of Defendants' conduct, Mr. Estes suffered a preventable death while in custody, in violation of his rights under the United States Constitution and the laws of the State of Alabama.

## JURISDICTION AND VENUE

**9.** This Court has subject-matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, because this action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983, the Americans with Disabilities Act, and the Rehabilitation Act.

**10.** This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a), because those claims form part of the same case or controversy as Plaintiff's federal claims and arise from a common nucleus of operative facts.

**11.** The City of Orange Beach and the individual Defendants acted under color of state law at all relevant times.

**12.** Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims occurred within this judicial district, including at the Orange Beach Police Department Jail in Baldwin County, Alabama.

**13.** All Defendants are subject to personal jurisdiction in this District because they reside in, are located in, or conducted the relevant acts and omissions within the State of Alabama.

**PARTIES**

**14.** Plaintiff is the Estate of Clay Aaron Estes, deceased, by and through his duly appointed Personal Representative, Ashley Estes.

**15.** Defendant City of Orange Beach, Alabama ("the City"), is a municipal corporation organized under the laws of the State of Alabama and is responsible for the operation, administration, and policies of the Orange Beach Police Department and its jail facility.

**16.** At all relevant times, the City, through its policymakers, agents, officers, and employees, was responsible for establishing, implementing, enforcing, and disciplining violations of the policies, practices, and procedures governing the care, custody, supervision, and safety of detainees held in its jail.

**17.** Defendants John Does 1-10 are currently unidentified officers, jailers, supervisors, and/or policymakers employed by or acting on behalf of the City, who were responsible for Mr. Estes's custody, medical care, monitoring, and supervision during the events described herein.

**18.** Defendants John Does 1-10 are sued in their individual capacities. Each acted under color of state law and within the scope of his or her employment or authority at all relevant times.

**19.** The true names and capacities of Defendants John Does 1-10 are presently unknown to Plaintiff despite reasonable efforts to identify them. Plaintiff will amend this Complaint to substitute the proper parties when their identities are ascertained through discovery.

**20.** At all relevant times, each Defendant acted individually and jointly, and the acts and omissions of each Defendant are attributable to the others for purposes of establishing liability to the extent permitted by law.

## FACTUAL ALLEGATIONS

### A. The Death of Clay Aaron Estes

**21.** On August 9, 2025, Clay Aaron Estes was taken into custody and confined at the Orange Beach Police Department Jail, where he remained until his death on August 12, 2025.

**22.** During his confinement, Mr. Estes was entirely dependent upon jail staff for his safety, supervision, medical care, and access to emergency assistance.

**23.** On the evening of August 10, 2025, while still in custody, Mr. Estes experienced medical symptoms that prompted his transport from the jail to a local emergency department for evaluation and treatment.

**24.** At the hospital, Mr. Estes was evaluated and treated for multiple conditions, including complaints of abdominal pain, nausea, vomiting, and drug-related complications.

**25.** He underwent diagnostic testing and received medical treatment before being discharged in the early morning hours of August 11, 2025.

**26.** Following his discharge, Mr. Estes was returned to the Orange Beach Police Department Jail.

**27.** Upon his return, Mr. Estes was placed under supervision due to ongoing medical and mental-health concerns. Jail personnel thus recognized that Mr. Estes required heightened observation.

**28.** Despite these known concerns, adequate monitoring and protective measures were not maintained.

**29.** Based on information presently available to Plaintiff, Mr. Estes's supervision was affirmatively discontinued following a shift change at approximately 7:00 p.m. on August 11, 2025.

**30.** On the morning of August 12, 2025, Mr. Estes was discovered in his jail cell hanging by a sheet around his neck.

**31.** Emergency medical services responded and initiated life-saving measures, including cardiopulmonary resuscitation. EMS arrived at the jail at approximately 10:45 a.m.

**32.** Mr. Estes was transported to an emergency department, where medical personnel continued extensive resuscitative efforts.

**33.** At the time of his arrival, Mr. Estes was in cardiac arrest and not breathing.

**34.** Emergency medical providers performed advanced life-saving interventions, including airway placement and continued resuscitation, but these efforts were unsuccessful.

**35.** Mr. Estes was pronounced deceased on August 12, 2025. The cause of death was asphyxia due to hanging.

**36.** The events leading to Mr. Estes's death occurred while he was in the custody and control of the City and its officers, who were responsible for his care, monitoring, and safety.

**37.** Prior to his death, Mr. Estes had recently required hospital evaluation while in custody and had been identified as requiring supervision, placing Defendants on notice that he was vulnerable and required monitoring.

**38.** Despite this knowledge, Defendants failed to maintain adequate supervision, failed to provide appropriate monitoring, and failed to take reasonable steps to protect Mr. Estes from a foreseeable risk of serious harm.

**39.** Defendants further failed to timely discover Mr. Estes after he attempted to harm himself and failed to intervene in time to prevent his death.

**40.** As a direct and proximate result of these failures, Mr. Estes suffered a preventable death while in custody.

**B. Mr. Estes Was Treated the Way the City Treats All Detainees**

**41.** The failures that killed Mr. Estes were not a departure from how the Orange Beach Police Department Jail operates. They were the ordinary, expected result of how the City operates its jail with respect to every detainee in its custody.

**42.** Upon information and belief, the City does not conduct constitutionally adequate intake or suicide-risk screening of the detainees it accepts into the Orange Beach Police Department Jail. Detainees exhibiting medical or mental-health concerns, including intoxication, withdrawal, and post-hospitalization vulnerability, are routinely booked and housed without meaningful screening, classification, or watch designation.

**43.** Upon information and belief, the City routinely fails to conduct timely and documented cell checks and welfare rounds at the intervals that minimally adequate custodial practice and the City's own nominal policies require. Detainees across the facility, not merely Mr. Estes, are left unobserved for dangerous intervals.

**44.** Upon information and belief, the City has a persistent practice of discontinuing or failing to communicate watch and observation status across shift changes, so that detainees designated for supervision on one shift are routinely left unsupervised on the next. Mr. Estes was killed by precisely this practice, which the City applies to detainees generally.

**45.** Upon information and belief, the City routinely fails to house at-risk detainees in appropriate, suicide-resistant conditions and routinely leaves in cells the very instrumentalities, including bedsheets and other ligature points and materials, that adequate suicide-prevention practice requires be removed for at-risk detainees.

**46.** Upon information and belief, the City routinely fails to timely activate emergency medical response when detainees are found in medical distress, resulting in preventable deterioration and death.

**47.** These are not allegations of a single bad shift. They describe the standard, accepted, and repeated manner in which the City confines the population of the Orange Beach Police Department Jail. Mr. Estes died because he was subjected to the City's ordinary custodial practices, not because those practices were departed from.

**48.** The City's written policies, standard operating procedures, staffing plans, post orders, observation and watch logs, rounds and cell-check logs, shift-change logs, booking and intake records, and prior detainee-incident and death records will demonstrate that the deficiencies that caused Mr. Estes's death are facility-wide and longstanding.

**49.** Upon information and belief, discovery will reveal whether the deficiencies alleged herein previously caused or contributed to serious harm at the Orange Beach Police Department Jail and whether prior incidents placed the City on notice of similar custodial deficiencies. Relevant information is expected to be contained in the City's grievance records, incident and use-

of-force reports, in-custody death and medical-emergency records, internal-affairs and internal-review files, jail logs, and other custodial records.

**C. The City's Failure to Discipline and Its Ratification of Unconstitutional Conduct**

**50.** Upon information and belief, discovery will reveal whether jail personnel had previously engaged in similar conduct and whether the City had actual or constructive notice of such conduct through detainee grievances, incident reports, prior self-harm incidents, suicide attempts or deaths in the facility, internal investigations or reviews, and the contents of its own logs, records, and other custodial documents.

**51.** Upon information and belief, to the extent the City received notice of prior similar conduct, the City, through its final policymakers responsible for jail operations, failed to investigate, correct, retrain, or discipline the personnel responsible. Any persistent failure to take corrective action despite such notice communicated to jail personnel that violations of detainees' rights would be tolerated and permitted the continuation of the conduct that caused Mr. Estes's death.

**52.** To the extent discovery establishes that the City persistently failed to supervise or discipline jail personnel despite actual or constructive notice of similar constitutional violations, that failure constituted a custom or de facto policy of tolerating the unconstitutional treatment of detainees and reflected deliberate indifference to the known or obvious risk that detainees would suffer serious harm or death.

**53.** After Mr. Estes's death, upon information and belief, the City's final policymakers reviewed the circumstances of his death, including the decision to discontinue his supervision after the shift change, and approved, adopted, and ratified both that decision and the basis for it, declining to discipline the personnel involved or to treat their conduct as wrongful.

**54.** By ratifying the conduct and the reasoning that led to Mr. Estes's death, the City's final policymakers made that conduct the official position and policy of the City, rendering the City liable for it.

**COUNT I – ALABAMA WRONGFUL DEATH**
**(Against All Defendants)**

**55.** Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**56.** At all relevant times, Defendants owed a duty to Clay Aaron Estes to exercise reasonable care for his safety, including providing adequate custody, supervision, monitoring, and medical care while he was incarcerated.

**57.** As a pretrial detainee in the custody and control of Defendants, Mr. Estes was entirely dependent upon them for his protection and was unable to provide for his own safety or medical needs.

**58.** The individual Defendants breached their duties to Mr. Estes through negligent, reckless, and/or wanton conduct, and the City is liable for the negligent, careless, or unskillful acts and omissions of its employees acting within the line and scope of their employment, including but not limited to:

- **a.** failing to provide adequate supervision and monitoring;
- **b.** discontinuing required supervision despite known risk factors;
- **c.** failing to implement or follow appropriate custodial and safety procedures;
- **d.** failing to provide adequate medical and mental-health care;
- **e.** failing to timely discover Mr. Estes after he attempted to harm himself;
- **f.** failing to timely intervene to prevent his death.

**59.** The risk that an unsupervised detainee in Mr. Estes's condition would suffer serious injury or death, including self-harm, was foreseeable and unreasonable under the circumstances.

**60.** The individual Defendants' conduct demonstrated a conscious disregard of known conditions and a reckless indifference to the consequences of their actions and omissions.

**61.** Defendants failed to discharge ministerial duties required by applicable custodial policies and procedures, including nondiscretionary duties related to detainee supervision, observation, watch status, and monitoring.

**62.** As a direct and proximate result of Defendants' negligence, recklessness, and/or wantonness, Mr. Estes suffered severe injury and death while in custody.

**63.** To the extent Plaintiff alleges reckless or wanton conduct, such allegations are directed at the individual Defendants. The City of Orange Beach is liable only for the negligence, carelessness, or unskillfulness of its employees acting within the scope of their employment, as permitted under Ala. Code § 11-47-190.

**64.** Under Alabama law, wrongful-death damages are punitive in nature and are intended to punish the wrongdoer and deter similar conduct.

**65.** Defendants' conduct was of such a character as to warrant the imposition of damages under Alabama's wrongful-death statute.

**66.** Plaintiff, on behalf of the Estate of Clay Aaron Estes, seeks recovery of all damages permitted under Alabama law, together with costs and such additional relief as the Court deems just and proper.

**COUNT II – MUNICIPAL LIABILITY (STATE LAW)**
**(Against Defendant City of Orange Beach)**

**67.** Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**68.** Pursuant to Ala. Code § 11-47-190, the City of Orange Beach is liable for injuries caused by the negligent, careless, or unskillful acts or omissions of its agents and employees while acting within the line and scope of their employment.

**69.** At all relevant times, the officers, jail personnel, and other employees responsible for the custody, care, supervision, and monitoring of Clay Aaron Estes were acting within the line and scope of their employment with the City of Orange Beach.

**70.** These employees owed a duty to exercise reasonable care in the custody, supervision, monitoring, and protection of Mr. Estes while he was incarcerated.

**71.** The employees of the City breached that duty by negligently failing to provide adequate supervision, monitoring, and care, including but not limited to:

- **a.** failing to maintain appropriate supervision and observation;
- **b.** discontinuing supervision despite known risk factors;
- **c.** failing to follow applicable policies, procedures, and standards;
- **d.** failing to timely discover Mr. Estes after he attempted to harm himself;
- **e.** failing to respond promptly and appropriately to his medical emergency.

**72.** The negligent acts and omissions of the City's employees directly and proximately caused Mr. Estes's injuries and death.

**73.** Defendants failed to discharge ministerial duties required by applicable custodial policies and procedures, including nondiscretionary duties related to detainee supervision and monitoring.

**74.** The City is not liable for wanton conduct, but only for the negligence, carelessness, or unskillfulness of its employees.

**75.** Plaintiff, on behalf of the Estate of Clay Aaron Estes, seeks recovery from the City to the full extent allowed under Ala. Code § 11-47-190 and other applicable law.

**COUNT III – 42 U.S.C. § 1983**
**DELIBERATE INDIFFERENCE / FAILURE TO PROTECT**
**(Against John Doe Defendants 1–10, in their individual capacities)**

**76.** Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**77.** At all relevant times, Defendants John Does 1-10 were acting under color of state law in their capacities as officers, jailers, supervisors, and/or other personnel responsible for the custody, monitoring, care, and protection of Clay Aaron Estes while he was confined at the Orange Beach Police Department Jail.

**78.** At all relevant times, Mr. Estes was a pretrial detainee entitled to the protections of the Fourteenth Amendment to the United States Constitution, including the right to reasonable safety, adequate medical attention, and protection from a substantial risk of serious harm while in custody.

**79.** Before his death, Mr. Estes had been transported for outside medical evaluation, returned to jail, and expressly placed under supervision because of medical and mental-health concerns. Following a shift change at approximately 7:00 p.m. on August 11, 2025, that supervision was affirmatively discontinued. Mr. Estes was found hanging in his cell the following morning.

**80.** Under these circumstances, Mr. Estes faced a substantial risk of serious harm, including a substantial risk of self-harm, serious medical deterioration, and death. Each Defendant was subjectively aware of that risk, having personally participated in, supervised, or received the handoff concerning his watch status, or the risk was so obvious that each Defendant's knowledge of it must be inferred.

**81.** Despite subjective knowledge of that substantial risk, each Defendant consciously disregarded it by failing to take reasonable available measures to abate it. Among other things, Defendants discontinued or failed to maintain Mr. Estes's supervision, failed to conduct required cell checks and welfare rounds, failed to remove obvious ligature materials, failed to protect Mr.

Estes from a known danger, failed to timely discover him after he attempted to harm himself, and failed to timely activate emergency response.

**82.** Defendants' acts and omissions constituted deliberate indifference to Mr. Estes's clearly established constitutional right, as a pretrial detainee, to protection from a known and substantial risk of serious harm, including suicide, a right of which every reasonable corrections officer would have been aware.

**83.** The discontinuation of supervision and failure to monitor Mr. Estes directly resulted in his ability to engage in self-harm and prevented the timely intervention that would have avoided his death.

**84.** As a direct and proximate result of Defendants' deliberate indifference and failure to protect, Mr. Estes suffered severe injury, cardiac arrest, and death while in custody.

**85.** The conduct of Defendants John Does 1-10 was willful, malicious, reckless, and in callous disregard of Mr. Estes's federally protected rights. Punitive damages are therefore recoverable against the individual Defendants to the extent permitted by law.

**86.** Plaintiff, on behalf of the Estate of Clay Aaron Estes, seeks all relief available under 42 U.S.C. § 1983 against Defendants John Does 1-10 in their individual capacities, including compensatory damages, punitive damages, attorneys' fees, costs, and such further relief as the Court deems just and proper.

**COUNT IV – 42 U.S.C. § 1983 (MONELL LIABILITY)**
**(Against Defendant City of Orange Beach)**

**87.** Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**88.** At all relevant times, Defendant City of Orange Beach was a municipal entity subject to suit under 42 U.S.C. § 1983 and was responsible for the operation of the Orange Beach Police Department and its jail.

**89.** The constitutional violations suffered by Clay Aaron Estes were caused by the City's own policies, practices, customs, failures to train, failures to supervise and discipline, and final-policymaker decisions and ratification, and not merely by isolated acts of subordinate employees.

**A. Widespread Custom and Practice**

**90.** As alleged above, the treatment Mr. Estes received reflects the City's standard and widespread practice for all detainees confined in the Orange Beach Police Department Jail. The City maintains persistent customs and practices of (a) inadequate intake and suicide-risk screening; (b) inadequate and undocumented cell checks and welfare rounds; (c) discontinuing or failing to communicate watch and observation status across shift changes; (d) failing to house at-risk detainees in appropriate conditions and failing to remove obvious ligature materials; and (e) failing to timely activate emergency medical response.

**91.** These practices are so permanent, well-settled, and widespread as to constitute customs having the force of law, and they represent the standard operating practice of the City's jail rather than deviations from it. The City's policymakers knew or should have known of these customs and practices and their obvious dangers, yet permitted them to continue.

**B. Failure to Train**

**92.** The City failed to provide adequate training to jail personnel regarding: recognition of detainees presenting a suicide or self-harm risk; intake and post-hospital screening of detainees returned to custody after medical evaluation; continuity of observation and watch status across shift changes; safe housing and removal of ligature materials for at-risk detainees; and timely emergency response and EMS activation when a detainee is found in medical distress.

**93.** The need for such training was obvious. The City's jail personnel are regularly responsible for detainees who are wholly dependent on them for safety, medical access,

observation, and emergency response, including detainees like Mr. Estes, who have just returned from outside medical care and been placed under supervision. The risk that inadequately trained personnel would fail to protect such detainees from serious harm and suicide was a known and obvious consequence of the failure to train.

**94.** The City's failure to train reflected deliberate indifference to the constitutional rights of the detainees with whom its personnel come into contact, and was a moving force behind the violation of Mr. Estes's rights.

### C. Failure to Supervise and Discipline

**95.** Upon information and belief, discovery will reveal whether jail personnel previously engaged in conduct substantially similar to the conduct that caused Mr. Estes's death and whether the City had actual or constructive notice of that conduct through grievances, incident reports, prior self-harm incidents, internal reviews, or its own logs and records.

**96.** To the extent the City received such notice but persistently failed to investigate, supervise, correct, retrain, or discipline the personnel responsible, that failure constituted a custom of tolerating unconstitutional conduct, communicated to jail personnel that violations of detainees' rights would be tolerated, and was a moving force behind the violation of Mr. Estes's rights.

**97.** Any such persistent failure to supervise or discipline, despite actual or constructive notice of similar violations, reflected deliberate indifference to the known or obvious risk that detainees would continue to suffer serious harm or death.

### D. Final-Policymaker Decision and Ratification

**98.** Upon information and belief, a municipal policymaker or command-level official with final authority over jail operations, staffing, and detainee-watch decisions made, approved, or allowed the decision to discontinue Mr. Estes's supervision following the approximately 7:00 p.m.

shift change on August 11, 2025, despite his recent hospital return and known need for observation. To the extent a final policymaker made or approved that decision, the City is liable for the decision itself.

**99.** In addition, after Mr. Estes's death, the City's final policymakers reviewed the circumstances of his death, including the decision to discontinue his supervision, and approved, adopted, and ratified both that decision and the reasoning behind it, declining to discipline the personnel involved or to treat their conduct as wrongful. By ratifying that conduct and its basis, the City's final policymakers made it the official policy of the City.

**E. Causation and Deliberate Indifference**

**100.** The City's policies, customs, practices, failures to train, failures to supervise and discipline, and final-policymaker decisions and ratification described above were each undertaken with deliberate indifference to the constitutional rights of detainees, including the right of a pretrial detainee to reasonable safety, adequate medical attention, and protection from a substantial risk of serious harm.

**101.** These municipal policies, customs, practices, failures, decisions, and ratification were the moving force behind the constitutional violations suffered by Mr. Estes, because they directly resulted in the discontinuation of his supervision, the absence of adequate monitoring, the failure to protect him from an obvious risk of serious harm, and the delay in discovering him and responding effectively.

**102.** As a direct and proximate result of the City's unconstitutional policies, customs, practices, failures, decisions, and ratification, Mr. Estes suffered injury and death while in custody.

**103.** Plaintiff, on behalf of the Estate of Clay Aaron Estes, seeks all relief available under 42 U.S.C. § 1983 and 42 U.S.C. § 1988 against Defendant City of Orange Beach, including

compensatory damages, attorneys' fees, costs, and such further relief as the Court deems just and proper.

**COUNT V – VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE II**
**(Against Defendant City of Orange Beach)**

**104.** Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**105.** At all relevant times, Defendant City of Orange Beach was a "public entity" within the meaning of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq.

**106.** Title II prohibits a public entity from excluding a qualified individual with a disability from participation in or the benefits of its services, programs, or activities, or otherwise discriminating against that individual by reason of disability. The confinement, custodial, and medical services of a municipal jail are services, programs, or activities within the meaning of Title II.

**107.** At all relevant times, Clay Aaron Estes was a qualified individual with a disability, or was regarded by Defendant as having a disability. His mental-health condition, which included a substantial risk of suicide, and his related medical conditions substantially limited one or more major life activities, including brain and neurological function and the ability to care for himself. In the alternative, Defendant regarded Mr. Estes as having such impairments and expressly designated him for supervision on that basis.

**108.** Mr. Estes's disability was known to Defendant. Because of that disability, he required reasonable modifications to the City's ordinary custodial practices in order to safely access the benefits of confinement on an equal basis with non-disabled detainees.

**109.** Defendant denied Mr. Estes the benefits of its services and discriminated against him by reason of his disability by failing to make reasonable modifications to its policies, practices,

and procedures that were necessary to avoid discrimination on the basis of disability, and by administering its custodial program in a manner that denied a suicidal, disabled detainee meaningful and safe access to the benefits of confinement afforded to others.

**110.** Reasonable modifications that were available and necessary under the circumstances included, but were not limited to: continued observation and supervision; appropriate monitoring following hospital evaluation and return to custody; placement in a safe, suicide-resistant housing environment; implementation of suicide-prevention and medical-watch measures; and coordination of medical and custodial care.

**111.** This is not a claim that Mr. Estes received negligent medical treatment. It is a claim that Defendant, because of and by reason of his disability, denied him reasonable modifications and equal access to the safe custodial conditions its program is required to provide.

**112.** Defendant's conduct constituted intentional discrimination and deliberate indifference to Mr. Estes's rights under the ADA, in that Defendant had actual knowledge that harm to his federally protected rights was substantially likely and failed to act upon that knowledge. Compensatory damages are therefore available.

**113.** As a direct and proximate result of Defendant's conduct, Mr. Estes suffered injury and death while in custody.

**114.** Plaintiff, on behalf of the Estate of Clay Aaron Estes, seeks all relief available under Title II of the Americans with Disabilities Act, including compensatory damages, attorneys' fees, costs, and such other relief as the Court deems just and proper.

**COUNT VI – VIOLATION OF THE REHABILITATION ACT, SECTION 504**
**(Against Defendant City of Orange Beach)**

**115.** Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**116.** Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, provides that no otherwise qualified individual with a disability shall, solely by reason of that disability, be excluded from participation in, denied the benefits of, or subjected to discrimination under any program or activity receiving federal financial assistance.

**117.** At all relevant times, Defendant City of Orange Beach received federal financial assistance and operated programs and activities, including its jail, subject to Section 504.

**118.** At all relevant times, Clay Aaron Estes was a qualified individual with a disability, or was regarded by Defendant as having a disability, as alleged above, and Defendant knew of his disability and expressly designated him for supervision because of it.

**119.** Defendant excluded Mr. Estes from participation in, denied him the benefits of, and subjected him to discrimination under its custodial programs and activities, solely by reason of his disability, by failing to provide the reasonable modifications necessary to afford him safe and equal access to the benefits of confinement, as set forth above.

**120.** As with the ADA claim, this is not a claim of negligent medical treatment but a claim that Defendant, by reason of Mr. Estes's disability, denied him reasonable modifications and equal access to safe custodial conditions.

**121.** Defendant acted with intentional discrimination and deliberate indifference to Mr. Estes's federally protected rights, in that it had actual knowledge that harm to those rights was substantially likely and failed to act upon that knowledge. Compensatory damages are therefore available.

**122.** As a direct and proximate result of Defendant's conduct, Mr. Estes suffered injury and death while in custody.

**123.** Plaintiff, on behalf of the Estate of Clay Aaron Estes, seeks all relief available under Section 504 of the Rehabilitation Act, including compensatory damages, attorneys' fees, costs, and such other relief as the Court deems just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, the Estate of Clay Aaron Estes, by and through its duly appointed Personal Representative, Ashley Estes, respectfully requests that this Court enter judgment in its favor and against Defendants, and award the following relief:

**A.** Compensatory damages in an amount to be determined by the jury for the injuries, suffering, and death of Clay Aaron Estes;

**B.** Wrongful-death damages under Alabama law, which are punitive in nature and intended to punish wrongdoing and deter similar conduct;

**C.** Punitive damages against the individual Defendants, to the fullest extent permitted by law, for their willful, reckless, and callous disregard of Mr. Estes's constitutional rights;

**D.** All damages recoverable under 42 U.S.C. § 1983 for the deprivation of Mr. Estes's rights under the United States Constitution;

**E.** Compensatory damages under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act for Defendants' discrimination and failure to provide reasonable modifications;

**F.** Reasonable attorney's fees, litigation expenses, and costs pursuant to 42 U.S.C. § 1988, the ADA, the Rehabilitation Act, and all other applicable provisions of law;

**G.** Prejudgment interest and postjudgment interest as allowed by law;

**H.** Such other and further relief, whether legal or equitable, as the Court deems just, proper, and appropriate under the circumstances.

## JURY DEMAND

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 19th day of October 2026.

The Law Office of Melvin H. Dixon, Jr., PLLC

***By: /s/ Melvin H. Dixon, Jr.***
Melvin H. Dixon, Jr. (ASB-0574P17B)
23710 US Hwy 98, Ste D2
Fairhope, Alabama 36532
(251) 306-0402
MD@MelvinDixonLaw.com
Counsel for Plaintiff